UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                       No. 20-CR-1777 MV

DAKOTA BRISCOE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Mr. Briscoe's four motions *in limine*, (1) a Motion *In Limine* to Exclude Any Evidence of Defendant's Gang Affiliation, Tattoos, and Alias ("Gang Affiliation MIL") [Doc. 152], (2) a Motion *In Limine* to Prohibit Improper Lay Opinion Regarding Identification Testimony ("Lay Opinion MIL") [Doc. 153], (3) a Motion *In Limine* to Exclude Reference to Jane Doe as "Victim" and to Exclude Jane Doe Testimony About Impact of Incident ("Victim MIL") [Doc. 154], and (4) a Motion *In Limine* to Exclude Details Surrounding Manner of Defendant's Arrest ("Arrest MIL") [Doc. 156]. The government filed responses. Docs. 172, 173, 174, 175. Having carefully considered the briefs and the relevant law, and being otherwise fully informed, the Court finds as follows: the Gang Affiliation MIL is moot**,** the Court will reserve ruling on the Lay Opinion MIL, the Victim MIL is moot in part and denied in part**,** and the Arrest MIL is not well taken and will be denied**.**

BACKGROUND

Mr. Briscoe is charged, *inter alia,* with two counts of Attempted Carjacking in violation of 18 U.S.C. § 2119(1), one count of Carjacking in violation of 18 U.S.C. § 2119(1), and one count of Using and Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18

1

U.S.C. § 924(c)(1)(A)(iii). The case is set for trial on Counts 4–7 of the Second Superseding Indictment on December 4, 2023. Doc. 130.

## DISCUSSION

### 1. Gang Affiliation MIL

In the Gang Affiliation MIL, Mr. Briscoe asks the Court to exclude evidence regarding Mr. Briscoe's alleged gang affiliation, the meaning behind his tattoos, and his use of an alias. Doc. 152 at 1. He argues that such evidence would not be relevant under Federal Rule of Evidence 401 because there are no allegations of gang-involvement with respect to the crimes charged. *Id.* In the alternative, he argues that the evidence should be excluded under Rule 403 because any probative value would be substantially outweighed by the risk of unfair prejudice. *Id.* In its Response, the government stated that it will not seek to introduce any evidence of Mr. Briscoe's gang affiliation or any evidence of the meaning of his gang-related tattoos. Doc. 173 at 1. Although the government stated in its Response that some civilian witnesses who may be called to testify only know Mr. Briscoe by his alias, "Outlaw," the parties have agreed that those witnesses will be informed of Mr. Briscoe's name ahead of time and will only identify him by his name at trial. Because the government does not intend to introduce evidence of Mr. Briscoe's gang affiliation, tattoos, or alias, the Court finds that the motion is moot.

### 2. Lay Opinion MIL

Mr. Briscoe anticipates that the government will introduce video surveillance footage from homeowners that lived on Herrera St, which depicts the perpetrator at or near the residences where the attempted carjackings and completed carjacking occurred. Doc. 153 at 1. Accordingly, he seeks an order precluding witnesses from testifying to their opinion that the person in the video is in fact Mr. Briscoe. *Id.* He argues that the witnesses have no familiarity with Mr. Briscoe and are not

more likely to identify the perpetrator from the video than the jury itself. *Id.* at 3. He argues that admitting lay opinion testimony that Mr. Briscoe is the one depicted in the surveillance video "runs dangerously close to telling the jury what result to reach." *Id.* In its Response, the government argues that if the government lays a proper foundation, the law enforcement witnesses should be allowed to identify Mr. Briscoe in the surveillance videos. Doc. 174 at 1.

"The Federal Rules of Evidence permit lay witnesses to testify in the form of opinions or inferences given three general limitations." *United States v. Goodman*, 633 F.3d 963, 968 (10th Cir. 2011). Specifically, Rule 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Notably, "[t]he primary purpose of Rule 701 is to allow nonexpert witnesses to give opinion [or inference] testimony when, as a matter of practical necessity, events which they have personally observed cannot otherwise be fully presented to the court or the jury." *Randolph v. Collectramatic*, 590 F.2d 844, 846 (10th Cir. 1979).

"Rule 704(a) further provides that opinions and inferences "otherwise admissible" are "not objectionable" because they embrace "an ultimate issue to be decided by the trier of fact." *Goodman*, 633 F.3d at 968 (quoting Fed. R. Evid. 704(a)). The court, however, "has the discretion to exclude lay witness testimony for other reasons contemplated by the Federal Rules of Evidence, among them (1) Rule 701 (whether the testimony is rationally based on perceptions of the witness and would be helpful to the trier of fact); and (2) Rule 403 (whether the evidence is cumulative or its helpfulness is outweighed by unfair prejudice)." *Id.* at 969.

With respect to lay identification testimony, the Tenth Circuit held in *United States v.*

3

*Williams* that an officer could testify that the defendant was the person depicted in a surveillance video because the officer had encountered the defendant six times over a three-year period. 396 Fed. Appx. 516, 518 (10th. Cir. 2010) (unpublished); *see also United States v. Bush,* 405 F.3d 909, 917 (10th Cir. 2005) (finding that a detective's identification of the voice on an audiotape as belonging to the defendant was helpful to the jury because the detective had spoken to the defendant on three prior occasions). In determining whether lay opinion identification testimony would be helpful to the jury, the *Williams* Court noted that several factors are relevant, including the clarity of the surveillance video, the completeness with which the subject is depicted in the video, and whether the defendant had disguised his appearance at the time of the offense. *Id.* (quoting *United States v. Dixon,* 413 F.3d 540, 545 (6th Cir. 2005)).

Because the Court is not able at this time to address the *Williams* factors to determine whether the lay identification testimony would be helpful to the jury, the Court will reserve ruling on this motion. If the government is able to lay a foundation, namely that the law enforcement officers' testimony would be helpful to the jury, the witnesses will be allowed to identify Mr. Briscoe as the person depicted in the surveillance footage.

**3. Victim MIL**

Mr. Briscoe moves the Court to prohibit the prosecution from using the word "victim" in describing any of the Jane Does, consistent with his presumption of innocence. Doc. 154 at 1. He further asks the Court to prohibit the government and its witnesses from directly or indirectly attempting to convey to the jury that the Jane Does suffered trauma or emotional difficulty after September 7, 2020. *Id.* In its Response, the government states that it will not use the term "victim" and proposes the term "alleged victim" instead. Doc. 175 at 1. The government also states that it will not elicit testimony about any post-offense traumatic events. *Id.* However, the government

requests that it be allowed to use the term "victim" in its closing argument. *Id.* At the pretrial conference, defense counsel agreed to the use of the term "alleged victim." Hr'g Tr. at 154:15.

Because the government does not intend to use the term "victim" during its opening statements or during the presentation of evidence, the Court finds Mr. Briscoe's motion moot in part. As to closing argument, the government is permitted to argue that it has met its burden to establish Mr. Briscoe's guilt. Consequently, the government may follow this argument to its logical conclusion by referring to the Jane Does using the term "victim." *See, e.g., Lambert v. Midwest City Memorial Hospital Authority,* 671 F.2d 372, 375 (10th Cir. 1982) (noting that the Tenth Circuit has "consistently afforded trial counsel considerable leeway" during closing argument). Thus, with respect to the term "victim," the Court denies in part and finds moot in part Mr. Briscoe's motion. With respect to the evidence of post-offense traumatic events, the Court finds that Mr. Briscoe's motion is moot.

**4. Arrest MIL**

Mr. Briscoe asks the Court to exclude all details of his arrest on September 16, 2020. Doc. 156 at 1. He argues that "the circumstances surrounding Mr. Briscoe's arrest are completely unrelated to the events that transpired on September 7, 2020." *Id.* at 3. In the alternative, he argues that the evidence should be excluded on Rule 403 grounds because the evidence would confuse the jury and could create the inference that Mr. Briscoe is a criminal with gang-related ties. *Id.* at 3–4.

In its Response, the government argues that the date and location of Mr. Briscoe's arrest, along with the details of his interactions with law enforcement are relevant and admissible. Doc. 172 at 2. The government argues that the fact that Mr. Briscoe was acting nervous, that he did not possess identification, used the name "Austin Epps," and had fresh tattoos on his face are all

indicative of flight and therefore relevant to show consciousness of guilt. *Id.* The government has also represented that it will not present evidence about the gun discovered in Mr. Briscoe's bag at the time of his arrest. Hr'g Tr. at 156:9–10.

### a. Legal Standard

Evidence of flight has "been viewed as an admission by conduct which expresses consciousness of guilt" and as such, "flight evidence carries with it a *strong presumption of admissibility.*" *United States v. Martinez,* 681 F.2d 1248, 1256 (10th Cir. 1982) (emphasis added). While a defendant may leave or attempt to leave a jurisdiction for innocent reasons, the existence of alternative explanations "is not a justification for excluding [evidence of flight] where it has highly probative value." *Id.* at 1259 (cleaned up); *see also United States v. Lepanto,* 817 F.2d 1463, 1467 (10th Cir. 1987) ("Although guilt is not a necessary inference from defendant's trip to New York on August 27, it is a permissible one, especially when combined with other evidence that defendant had lied to police and attempted to dispose of evidence before leaving the jurisdiction.").

In *Martinez,* the Tenth Circuit held that evidence of flight was relevant and admissible where the defendant had disappeared for seven years, reentered the country under a different name, was arrested under that name, and was subsequently identified through fingerprint evidence. 681 F.2d at 1255. The Court emphasized that evidence of flight was relevant because the initial flight occurred within a matter of days after the crime and the defendant "had to know at the time of his flight that he was sought in connection with the crime for which he is now bring tried." *Id.* at 1257. The Tenth Circuit has also held that evidence that the defendant used an alias in interactions with law enforcement can also be relevant to show consciousness of guilt. *Glass,* 128 F.3d at 1408.

Evidence of flight may still be excluded under Federal Rule of Evidence 403. *Martinez,* 681 F.2d at 1255 (citing *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir. 1977). To be

unfairly prejudicial, evidence must be likely to provoke an emotional response in the jury or "otherwise tend[] to affect adversely the jury's attitude toward the defendant wholly apart from its judgement as to his guilt or innocence of the crime charged." *United States v. Tan,* 254 F.3d 1204, 1211–12 (10th Cir. 2001). Exclusion under Rule 403 is an "extraordinary remedy" that should be used "sparingly." *United States v. Rodriguez,* 192 F.3d 946, 949 (10th Cir. 1999). In *Martinez,* the Court held that the risk of unfair prejudice did not substantially outweigh the highly probative value of the evidence in the case, namely that Mr. Martinez had disappeared shortly after the crimes occurred and then reentered the country using a different name. 681 F.2d at 1259.

### b. The details of Mr. Briscoe's arrest are admissible as evidence of flight.

Mr. Briscoe was arrested on September 16, 2020 at a border checkpoint in Las Cruces, New Mexico. Doc. 129 at 1. When Mr. Briscoe pulled into the border checkpoint, United States Border Patrol Agent Jose Escajeda noticed that he was acting nervous and that he had fresh tattoos on his face. *Id.* at 2. At a suppression hearing, Agent Escajeda testified at that Mr. Briscoe's van did not have any registration tags or a license plate, and that Mr. Briscoe did not have any identification. *Id.* Mr. Briscoe identified himself as "Austin Epps" and was arrested when Agent Escajeda discovered that "Austin Epps" had an active warrant for a failure to appear. *Id.* It was not until the day after Mr. Briscoe was arrested that his true identity was discovered. *Id.* at 5.

The defense argues that in order for evidence of flight to be admissible, the government must first establish "sufficient factual predicates that support a given set of inferences," namely that the behavior shows a consciousness of guilt for the specific crime charged. Doc. 183 at 2 (citing *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir. 1977)). Accordingly, the defense argues that the flight in this case cannot be connected to the carjacking charges specifically and the evidence is therefore inadmissible. *Id.* However, the Court finds that it is a "permissible

7

inference" that Mr. Briscoe was fleeing the carjacking charges. *Lepanto,* 817 F.2d at 1467.  Like in *Martinez,* Mr. Briscoe's initial flight occurred within a matter of days after the crimes charged. 681 F.2d at 1254 (nothing that the defendant abruptly left Colorado "soon after several mail bombs were discovered"). At the pretrial conference, the government represented that there was significant media coverage of the offense and that there were wanted posters bearing Mr. Briscoe's face. Hr'g Tr. at 164:5–10. Given the nature of the murder and carjackings, and the media publicity, Mr. Briscoe "had to know at the time of his flight that he was sought in connection" with the crimes charged. *Id.* at 1257. Further, in *Myers,* where the Fifth Circuit found that the evidence did not support an inference that the defendant was fleeing the crimes charged, the defendant had "left the state between three and six weeks after the date of the robbery." 550 F.2d at 1050. Here, Mr. Briscoe was arrested at a border checkpoint in Las Cruces a week after the alleged crimes occurred. Even if his primary motivator was to flee the murder charges, because the carjackings occurred within minutes of the homicides and Mr. Briscoe fled to Las Cruces within a short period of time after the offenses, there exists a permissible inference that Mr. Briscoe was, at least in part, fleeing the carjacking charges.

The defense further argues that the underlying facts at issue here differ from the relevant Tenth Circuit case law because "these cases dealt with scenarios where the defendant fled the jurisdiction for a specific charge, after learning of an indictment or investigation, or where the defendant fled the jurisdiction prior to a trial setting." Doc. 183 at 2 (citing *Martinez,* 681 F.2d at 1256, *United States v. Akers,* 215 F.3d 1089, 1103 (10th Cir. 2020), *Lepanto,* 817 F.2d at 1467). However, the 10th Circuit "has never required evidence of a direct causal link between an accused's knowledge of an indictment or warrant and the accused's flight." *United States v. Brown,* 190 Fed. App'x. 704, 710 (10th Cir. 2006) (unpublished). Accordingly, Mr. Briscoe's behavior is

still probative of flight even if he had not been formally indicted or arrested for the alleged crimes.

The Court finds that the date and location of Mr. Briscoe's arrest is admissible as evidence of flight. It is significant that the facts of Mr. Briscoe's case are similar to those in *Martinez* as he was stopped at a border checkpoint and was initially arrested under the name "Austin Epps" after Border Patrol agents discovered a warrant out for the arrest of Mr. Epps. Doc. 111 at 1–3. Similarly, the defendant in *Martinez* was stopped at a port of entry in Arizona, gave the customs agent a different name, and was arrested when he tried to flee after the agent found a Mexican passport in his bag. 681 F.2d at 1255. Accordingly, this evidence is sufficient to support an inference of consciousness of guilt. *Id.*

Furthermore, the government may introduce evidence of Mr. Briscoe's use of an alias and the existence of fresh tattoos because this evidence is probative of an attempt to "conceal his identity." *Brown,* 190 Fed. App'x at 710; *see also, Glass,* 128 F.3d at 1408 (finding that use of an alias can be relevant to show consciousness of guilt). However, consistent with the government's representation that it will not seek to introduce evidence of the meaning behind Mr. Briscoe's tattoos, Agent Escajeda may not testify about his interpretations of the tattoos or any possible connections between the tattoos and gang affiliation.

Lastly, the government may introduce evidence that Mr. Briscoe was acting nervously at the border checkpoint. Although the Tenth Circuit has not specifically recognized that nervousness is indicative of flight, other courts have recognized that nervousness, even where there is an alternative explanation, may be probative of consciousness of guilt. *See, e.g. United States v. Martinez,* 152 Fed. App'x. 391, 393 (5th Cir. 2005) (finding that the evidence of nervousness was connected to the defendant's consciousness of guilt). Even if it is natural for people to be nervous at a border checkpoint, as noted above, the existence of an alternative explanation does not render

the evidence inadmissible. *Lepanto,* 817 F.2d at 1467. Although the details of Mr. Briscoe's arrest may be prejudicial, they are highly probative of flight and are thus not substantially outweighed by unfair prejudice. *Martinez,* 681 F.2d at 1259.

In sum, the government may introduce evidence that Mr. Briscoe was arrested on September 16, 2020 at a border checkpoint in Las Cruces. They may also introduce evidence that he was nervous, used an alias, and had fresh face tattoos. Thus, the Arrest MIL is denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that:

(1) The Motion *In Limine* to Exclude Any Evidence of Defendant's Gang Affiliation, Tattoos, and Alias [Doc. 152] is moot;

(2) The Court will reserve ruling on the Motion *In Limine* to Prohibit Improper Lay Opinion Regarding Identification Testimony [Doc. 153];

(3) The Motion *In Limine* to Exclude Reference to Jane Doe as "Victim" and to Exclude Jane Doe Testimony About Impact of Incident [Doc. 154] is moot in part and denied in part; and

(4) The Motion *In Limine* to Exclude Details Surrounding Manner of Defendant's Arrest [Doc. 156] is denied.

ENTERED this 28th day of November 2023.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE